Richard D. Simons, J.
Petitioner moves for a stay of arbitration.
*1010 A contract executed by petitioner and respondents on June 5, 1969 provided for various terms and conditions of employment. In dispute is the provision for “ teacher load ”. It states that “ in order to promote an optimum learning and teaching environment, the Board of Education shall make every effort to maintain the 1968-1969 teacher specialist-pupil ratio.” For the fiscal year 1969-1970, the teacher specialist-pupil ratio was increased by the elimination of dental hygienists and by the reduction of the number of nurse teachers, both of whom come within the provisions of that clause. The respondent associations claim that petitioner did not comply with the promise to make every effort to maintain the ratio. Accordingly, grievance proceedings were initiated without success and respondents have now proposed arbitration under the contract.[1]
CPLR 7503 provides for a stay of arbitration if there was not a valid agreement, the agreement has not been complied with or the claim is barred by statutory limitations.
Once a valid agreement has been entered into providing for arbitration, any controversy arising between the parties to the contract which is within the compass of those provisions must go to arbitration. (Matter of Exercycle Corp. [Maratta], 9 N Y 2d 329.) The only exceptions in which a court will enjoin *1011 arbitration are: 1. where there is fraud or duress, 2. where there is no bona fide dispute between the parties, 3. where the performance which is the subject for the demand for arbitration is prohibited, or 4. where a condition precedent to arbitration under the contract has not been fulfilled. If the issue involved is solely one of construction or interpretation, it is for the arbitrators to decide the meaning of the contract. (Matter of Exercycle Corp. [Maratta], supra.)
There exists a dispute between the parties to this contract under which respondents make a reasonable claim of arbitrability. It is for the arbitrator to interpret the contract and to determine whether or not the dispute is arbitrable. It is the national public policy, recognized by this State, that labor disputes under collective bargaining contracts are presumptively arbitrable and it is for the arbitrators to determine the procedural and substantive issues of arbitrability. (Matter of Long Is. Lbr. Co. [Martin], 15 N Y 2d 380.) The court’s function is limited to finding that a dispute of some kind under a valid contract does, in fact, exist. If the contracting parties would avoid this presumption, then they must use carefully drafted words of exclusion. (Matter of Long Is. Lbr. Co. [Martin], supra.)
It is said that rules developed in the private sector, in this case, the presumption of arbitrability, are not and should not automatically be adopted for public employer-employee relations. That is the broad statement of Matter of Civil Serv. Employees Assn. v. Helsby (21 N Y 2d 541). It has been codified by the Legislature in subdivision 3 of section 209-a of the Civil Service Law. But that decision referred to and the statute deals with unfair labor practices. (Cf., also, 20 Syracuse L. Rev. The Taylor Act-Experiment in Public Employer-Employee Relations, Bernard T. King, p. 1.) It would fly in the face of the stated policy of the Legislature found in section 200 of the Civil Service Law which encourages grievance and arbitration procedures to hold that the ruling of Long Is. Lbr. Co. (Martin) (supra) was limited to the private sector.
The contract states at section VI (subd. 4 [d]) that an arbitrator shall neither have the power or authority to make a decision which requires commission of an act prohibited by law or which violates terms of the agreement. Subdivision (e) provides that the decision of the arbitrator shall be final and binding providing he does not usurp the functions of the Board of Education or the proper exercise of its discretion under the law. Petitioner contends that these are words of exclusion depriving any arbitrator of jurisdiction. They do not. The words limit *1012 the arbitrator’s power and do no more than state his legal duty.
It is argued that the court cannot find a valid contract to arbitrate because the agreement attempts to delegate nondelegable functions to an arbitrator, the Taylor Act (Civil Service Law, § 200 et seq.) notwithstanding. By means of the contract, publicly elected officials have yielded some of their power to arbitrators who are not responsible to the electorate. In other words, the contract calls for a prohibited performance, one of the exceptions noted in Matter of Exercycle Corp. (Maratta) (supra).
The courts have recognized the authority of governmental units to bind themselves to commercial arbitration. The exercise of sovereignty includes the power to contract and to contract to arbitrate disputes. (Matter of Dormitory Auth. [Span Elec. Corp.], 18 N Y 2d 114.) The Civil Service Law states the right of public employers to submit disputes to arbitration (§ 209, subd. 2), to negotiate collectively in determination of grievances arising under the terms and conditions of public employment (§ 204), and to enter into written agreements with employee organizations to determine terms and conditions of employment (§ 204). The power of the board to manage its local affairs and to discharge its duties under the Education Law “ or other statutes ” is recognized by section 1709 (subd. 33) of the Education Law.
The statute authorizes arbitration, the contract delimits the arbitrator’s powers to rule in accordance with law and the court retains power to confirm or reject the decision. (CPLR 7510.) Under the circumstances, there is no illegal delegation of power. The cases cited by petitioner are notably distinguishable in that they involve powers exercised by municipalities contrary to or without legislative authority. The Legislature has prohibited strikes by public employees and supplanted that remedy with grievance procedures to resolve labor disputes. This has been held a proper means of authorizing arbitration and not an illegal delegation of power. (54 Cornell L. Rev. 129.) Petitioner’s motion is denied.

. “ Grievance Procedure
* ** «
“ II. DEFINITIONS
* e *
“ 3. Grievance shall mean any breach in or infringement upon the negotiated agreement. (Agreement, p. 5.)
* » »
"VI. FORMAL PROCEDURE
* &
“4. STAGE 4: Arbitration
“ (a) After such hearing, if the aggrieved and/or the Associations are not satisfied with the decision at STAGE 3, and the Associations determina that the grievance is meritorious, and that appealing it is in the best interest of the school system, it may submit the grievance to arbitration by written notice to the Board of Education within fifteen (15) days of the decision at STAGE 3. (Agreement, p. 11.)
# & #
“ (d) The arbitrator shall have no power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this Agreement.” (Agreement, p. 11.)
“ (e) The decision of the arbitrator shall be submitted to the Board of Education and the Associations and, subject to law, shall be final and binding, provided that the arbitrator shall not usurp the functions of the Board of Education or the proper exercise of its judgment and discretion under law and this Agreement.” (Agreement, p. 12. )